IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CLAUDE ROBERT PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SF FIRE AND CASUALTY ) | Case No.: 1:11-CV-00309-AT |
| COMPANY; INFINITY ) | |
| SPECIALTY INSURANCE ) | |
| COMPANY f/k/a ATLANTA ) | |
| SPECIALTY INSURANCE ) | |
| COMPANY; LATASHA ) | |
| WILLIAMS; AND SUE ) | |
| ARENSTEIN, JOINTLY AND ) | |
| SEVERALLY, ) | |
| ) | |
| Defendants. ) | |

### **PLAINTIFF CLAUDE ROBERT PAYNE'S RESPONSE TO SF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Claude Robert Payne and files his Response to SF's Motion for Summary Judgment, showing the court as follows:

### **OVERVIEW**

In this action Payne alleges that SF ("SF") negligently and/or in bad faith denied coverage for the claims against him in the lawsuit styled *Hollomon, et al. v. Payne, et al.*, Civil Action File No. 2007A14959-4, State Court of Cobb County,

Georgia (the "*Hollomon* Litigation") and negligently and in bad faith failed to settle the *Hollomon* Litigation.

On the date of the July 1, 2006 accident ("Accident"), Payne was living at Payne's girlfriend's home. On that date, Payne was insured by SF under a homeowner's policy ("Policy"). The Policy <u>did not</u> cover Payne's girlfriend's home. After the Accident, Payne was represented by two attorneys--James Hopkins, who represented Payne during the criminal investigation, and Kevin Rodgers, who represented Payne in a property damage suit brought by the owner of the trailer in which Turner was living. Neither Hopkins nor Rodgers, both legal professionals, ever thought about the existence of coverage under the Policy, much less considered whether the Policy might be applicable to the Accident. Neither Hopkins nor Rodgers ever instructed Payne to look at the Policy or consider whether there might be coverage for the Accident. Payne, a layperson, had no belief and no reason to believe that there was any relationship between the Accident and the Policy and, thus, no idea to notify SF of the Accident.

In or around December 2007, the daughter of Turner instituted the *Hollomon* Litigation. Five to six weeks after Payne was served, SF was notified of the *Hollomon* Litigation. At the time SF received notice, the *Hollomon* Litigation,

which was in the very early stages of discovery. The January 2008 notice to SF was the first notice of the *Hollomon* Litigation.

However, SF's own claims system indicates that it received notice of the Accident on July 1, 2006. Furthermore, an employee of the agency that initially sold Payne the Policy, Patrick Hill, recalled discussion of the Accident at the agency office during 2007. There is ample evidence to suggest that SF may have had notice of the Accident prior to January 2008.

SF claims that the notice of the Accident and the *Hollomon* Litigation were untimely. However, questions of fact remain regarding (1) when SF received notice of the Accident, in light of the claims system entry and the statements of Hill, (2) whether the notice of the Accident was timely, (3) whether Payne's failure to notify SF immediately following the Accident was reasonable or justified, in light of his wholesale lack of knowledge of any relationship between the Accident and the Policy, and (4) whether the notice of the *Hollomon* Litigation was timely, in light of the fact that the litigation was in the early stages, Payne was not in default, and SF was given an opportunity to participate fully in the litigation. Where a question of fact exists, summary judgment may not be granted.[1]

---

[1] A grant of summary judgment is appropriate only if there is "no genuine dispute as to the material facts." Fed R. Civ. P. 56(a). A factual dispute exists that

SF also now asserts that there is no coverage for the Accident under the motor vehicle exclusion ("Exclusion"). SF initially reserved its rights to deny coverage in February 2008 under the business pursuits and intentional conduct exclusions, the late notice requirement, and "other reasons which may become known." SF then denied coverage for two distinct reasons--Payne failed to provide timely notice and the Accident was not an "occurrence" under the Policy. At no time prior to the filing of its Motion for Summary Judgment has SF ever informed Payne of its apparently newly generated position that there is no coverage for the Accident or *Hollomon* Litigation under the Exclusion. SF is, therefore, estopped to deny coverage on the basis of the Exclusion if it does, in fact, apply.

## RESPONSE

**A.   SF owed a duty to Payne to provide coverage for the Accident**

    **I.   There is at least a question of fact regarding when SF received notice of the Accident.**

---

precludes a grant of summary judgment where "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *U.S. v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991). When considering a grant of summary judgment, "the evidence of the non-movant is to be believed," and the court should "resolve all reasonable doubts about the facts in favor of the non-movant." *Id*. Where even one material fact is in dispute, "summary judgment is not justified." *Id*.

Under O.C.G.A. section 33-7-15, an insurer may receive notice of a claim from any number of persons, and the notice need not come from the insured. *Thomas v. Atlanta Cas. Co.*, 253 Ga.App. 199, 558 S.E.2d 432; *Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co.*, 212 Ga.App. 642, 442 S.E.2d 778 (1994). SF admits that notice to one of its agents constitutes notice to SF. In this case, a question of fact exists regarding when SF's agent received notice of the Accident. Payne does not contend that he provided notice of the Accident to SF until January 2008; however, there is evidence that SF received notice prior to January 2008.

SF now claims that an entry in its system indicating that notice was received on July 1, 2006 was made in error; however, this entry is not the only evidence suggesting that SF received notice before January 2008. Patrick Hill, who worked in the SF office that originally sold the Policy to Payne, told SF that at least someone in his office was aware of the Accident in 2007 because he had heard discussion about it. At his deposition, Hill did not recall the substance of that conversation, but could not refute that the conversation had been properly recorded in SF's claim notes. While Payne may not have notified SF of the Accident, SF may have properly received notice from some other source, and a question of fact remains regarding when SF received notice.

**II.     Even if SF did not receive notice until January 2008, a question of fact remains regarding whether the notice was timely.**

In determining whether notice of a loss is untimely, the fact-finder must consider what the insured knew about the loss and whether the insured acted "reasonably under the circumstances." *Forshee v. Employers Mut. Cas. Co.*, 309 Ga.App. 621, 623, 711 S.E.2d 28, 31 (2011). This consideration must be made "from the perspective of a reasonable person in the same circumstances as those the insured found himself," and must "eliminate the distorting effects of hindsight." *Id*. at 624, 711 S.E.2d at 32. "If a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim, the failure of the insured to give notice…is justified and no bar to coverage." *Id*. at 623-24, 711 S.E.2d at 31. Whether the failure was reasonable "is a question for the finder of fact." *Id*. at 624, 711 S.E.2d at 31.

Given the unique circumstances of the Accident, neither Payne nor his attorneys considered whether any policy of insurance might provide coverage for the Accident and Payne was never told by any attorney to even look at the Policy. If neither of Mr. Payne's lawyers considered whether the Policy might apply, it is clear that a reasonable insured in Payne's position would not have thought that the Policy applied. Even assuming SF did not receive notice of the Accident prior to January 2008, at the very least, a question of fact exists regarding the reasonableness of Payne's conduct in light of the circumstances of the Accident.

While SF argues that Payne should have known to report the Accident to SF, that position is one that results from the "distorting effects of hindsight."  SF also attempts to characterize Payne's failure to notify SF of the Accident as an intentional act on his part after considerable thought into the matter.  This is not a case where Payne consciously considered whether the Policy might provide coverage for the accident and determined that it would not, or consulted an attorney who advised him that the Policy did not apply.

The cases cited by SF in support of its motion all involve situations very different from the case at hand.  Most of the cases involve motor vehicle accidents and motor vehicle policies[2], while others involve businesses entities[3] far more sophisticated that Payne.  This case involves neither a motor vehicle policy nor a business entity but, rather, an individual who was cutting down a tree at his girlfriend's mobile home and who had no idea that the Policy might provide coverage and no idea that he needed to notify SF of the Accident.  Furthermore, SF also cites to *Hoover*, a case recently decided by the Georgia Court of Appeals

---

[2] *Protective Ins. Co. v. Johnson*, 256 Ga. 713, 352 S.E.2d 760, 761 (1987); *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga.App. 484, 649 S.E.2d 602 (2007); *Townsend v. Nat'l Union Fire Ins. Co.*, 196 Ga.App. 789, 397 S.E.2d 61 (1990); *Snow v. Atlanta Int'l Ins. Co.*, 182 Ga.App. 1, 354 S.E.2d 644 (1987).
[3] *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga.App. 484, 649 S.E.2d 602 (2007); *Southeastern Exp. Systems, Inc. v. Southern Guar. Ins. Co. of Ga.*, 224 Ga.App. 697, 482 S.E.2d 433 (1997).

7

which could not be more distinguishable from the case at hand. In *Hoover*, the insured was aware that insurance coverage would apply to the accident but failed to report the accident, ostensibly upon the belief that the victim's father had already contacted the insurer. That is not the case here.

The law in Georgia is clear--whether an insured provided timely notice is almost always a question of fact. *SF Fire & Cas. Co. v. Walnut Avenue Partners, LLC*, 296 Ga.App. 648, 651, 675 S.E.2d 534, 538 (2009). When an insured presents evidence of excuse or justification for a delay in reporting a claim, "whether the excuse or justification was sufficient and whether the insured acted diligently in giving the notice are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case." *Id.*[4]

In this case, Payne did not have the slightest idea that the Policy might apply to the Accident and therefore had no idea that he might need to report the Accident. At the very least, a question of fact remains as to whether Payne's

---

[4] The Georgia courts have held that delays of the same amount of time as the delay at issue and longer presented questions of fact that precluded a grant of summary judgment. *See Walnut Avenue Partners* (more than two year delay); *Forshee v. Employers Mut. Cas. Co.*, 309 Ga.App. 621, 711 S.E.2d 28 (2011) (two year delay); *Southern Trust Ins. Co. v. Clark*, 148 Ga.App. 579, 251 S.E.2d 823 (1978) (16 month delay); *Norfolk & Dedham Mut. Fire Ins. Co. v. Cumbaa*, 128 Ga.App. 196, 196 S.E.2d 167 (1973) (19 month delay).

conduct was reasonable and whether a reasonable insured in Payne's position would have known to notify SF.

### III.    The notice to SF of the *Hollomon* Litigation was timely.

The notice to SF of the *Hollomon* Litigation was not untimely.  Until January 2008, as discussed above, Payne did not even consider that the Policy might apply to provide coverage for the Accident.  As soon as anyone with knowledge of the Accident and the *Hollomon* Litigation became aware that the Policy might apply, the *Hollomon* Litigation was reported.  At the time SF was notified, Payne was not in default and the *Hollomon* Litigation was in the very early stages.  Both Payne and counsel for the *Hollomon* plaintiff cooperated with SF, spoke with SF, and provided copious documentation regarding the Accident and the *Hollomon* Litigation to SF.

The cases cited by SF are inapposite.  In *Advocate Networks*, the four-month delay was substantially longer than the delay at issue in this case.  Furthermore, in *Holbrook-Myers*, the insured consciously considered whether the policy would apply and made a determination not to report the claim.  No such consideration on the part of the Payne occurred here.  In *Granite State*, while the court did mention the 46-day delay, the real issue was whether the insurer could rely on delay to avoid coverage when the plaintiff dismissed the action and later re-filed.  As

discussed above, the Georgia courts have held that whether a delay was reasonable or justified is a question of fact that precludes a grant of summary judgment.

Given that notice to SF of the *Hollomon* Litigation was made only five to six weeks after Payne was served with the complaint, that Payne was not in default, and that the litigation had just commenced, SF's notice of the *Hollomon* Litigation was timely, or, at the very least, a question of fact remains regarding whether SF was timely notified.

### IV. SF's handling of the claim against Payne shows it intended to deny coverage, rather than look for coverage, from the beginning.

The conduct of SF shows that it had no intention, from the very inception, of affording Payne coverage for the loss. On February 18, 2008, before a single entry was ever made in SF's coverage claims log and before SF had even taken a recorded statement from Payne, SF's Claims Manager Jill Reina voiced SF's intention to deny coverage, noting that SF had a "solid defense on the late reporting issue." Approximately a week later Reina again noted that SF "ha[d] a great defense on notice." These statements were made during the same time period that SF was telling counsel for the *Hollomon* plaintiff that it did not have enough information to evaluate the claim. Additionally, during the coverage investigation, the SF employee charged with handling that investigation made little effort to ascertain when the SF agent's office was aware of the claim. She asked the agent's

10

office to check to see when the claim was reported, but after the agent's office informed her that it could not access the particular database, she did nothing to try to access the database herself or otherwise determine when the agent was notified of the claim. While SF claims that its corporate policy is to afford coverage if at all possible, it is clear that SF never had any intention of providing coverage for the Accident or the *Hollomon* Litigation.[5]

While SF is not required to show prejudice, the Georgia Court of Appeals had held that an "insurer's failure to demonstrate prejudice may be considered." *JNJ Foundation Specialists, Inc. v. D.R. Horton, Inc.*, 311 Ga.App. 269, 276, 717 S.E.2d 219, 226 (2011); *see also Grange Mutual Cas. Co. v. Snipes*, 298 Ga.App. 405, 680 S.E.2d 438 (2009); *BBL-McCarthy, LLC v. Baldwin Pacing Co.*, 285 Ga.App. 494, 646 S.E.2d 682 (2007). In this case, even if SF did not receive notice until January 2008, SF was in no way prejudiced. A thorough investigation of this matter was performed by law enforcement authorities, whose filed containing photographs, witness statements, and videotaped interviews of Payne

---

[5] Furthermore, statements made by SF to Payne's bankruptcy counsel further show SF's intent. In the June 17, 2008 letter from Michael Todd Camp to SF, Camp notes that SF's late notice argument is moot since SF "advised that it would have denied coverage regardless since it believes the facts do not meet the definition of an 'occurrence' under the policy." This is further evidence that SF's "investigation" into coverage was nothing more than a sham.

11

was turned over to SF.  SF was notified of the accident *Hollomon* Litigation mere weeks after Payne was served with the lawsuit.  Furthermore, counsel hired by SF to represent Payne felt that he was capable of handling the suit against Payne, that he could provide a good defense for Payne, and that he could handle the *Hollomon* Litigation through trial or other resolution.  Even if SF did not receive notice until January 2008, as evidenced by the statements of counsel it hired to represent Payne and the breadth of evidence in its possession, it was not prejudiced in any way.

> **V.     Counsel hired by SF to defend Payne recommended that SF pay its policy limits.**

While SF was undertaking what can only be described as its sham investigation into coverage, Sean Hynes, the attorney hired by SF to represent Payne, informed SF of his opinion that SF should pay the limits of its policy to protect Payne, given the extent of damages and the lack of defense to liability.  SF, however, ignored that advice and, instead, denied coverage for the Accident.[6]

> **B.     Payne's claim is not barred by the Exclusion**

> **I.     SF has waived its right to base a denial of coverage on the Exclusion.**

---

[6] While the question of whether the Accident was an "occurrence" under the Policy was not raised by SF in its Motion for Summary Judgment, it should be noted that SF's position on "occurrence" has since been squarely refuted by the Georgia Supreme Court in *American Empire Surplus Lines Insurance Company v. Hathaway Development Co., Inc.*, 288 Ga. 749, 707 S.E.2d 369 (2011).

At no time until the filing of its Motion for Summary Judgment did SF even hint that its denial of coverage was based on the Exclusion. In Georgia, an insured's reservation of rights must "fairly inform[ ] the insured of the insurer's position." *Boatright v. Old Dominion Ins. Co.*, 304 Ga.App. 119, 123, 695 S.E.2d 408, 412 (2010). The reservation of rights must "inform [the] insured of the basis for [the insurer's] reservations about coverage." *Jacore Systems, Inc. v. Central Mut. Ins. Co.*, 194 Ga.App. 512, 514, 390 S.E.2d 876, 878 (1990). "A liability insurer who assumes the conduct of the defense to an action with knowledge of facts constituting noncoverage and without disclaiming liability and giving notice of its reservation of rights is thereafter estopped from denying coverage." *Boatright*, 304 Ga.App. at 123, 695 S.E.2d at 412.

The Reservation of Rights Letter lists the following reasons for SF's reservations regarding coverage--business pursuits, intentional conduct, late notice, and "other reasons which may become known." The Denial Letter lists two reasons for SF's denial of coverage--untimely notice and lack of an "occurrence" under the Policy. No where in the Reservation of Rights Letter or the Denial Letter does SF suggest, hint, or even imply that it is reserving its rights or denying coverage based on the Exclusion. Neither the Reservation of Rights nor the Denial Letter "fairly informs" Payne that SF is reserving its rights or denying coverage

13

based on the Exclusion.  Furthermore, under *Boatright* and other precedent, SF, which had knowledge of the facts surrounding the Accident and the Loss and which failed to reserve its right to deny coverage on the basis of the Exclusion, cannot now claim that there is no coverage under the Policy after failing, for nearly four years, to raise the issue of the Exclusion.  SF is estopped to deny coverage on the basis of the motor vehicle exclusion.

### II.   Payne's use of a motor vehicle was only tangentially related to the Accident.

Even if the Court determines that SF is not estopped to deny coverage under the motor vehicle exclusion, it is clear that the Accident did not fall within the motor vehicle exclusion of the Policy.  The injury to Herschella Turner resulted when a tree being felled by Payne struck her house, and the relationship between the Accident and Mr. Payne's vehicle was only tangential.  Policy exclusions, such as the motor vehicle exclusion at issue here, are strictly construed. *Guaranty Nat. Ins. Co. v. Brock*, 222 Ga.App. 294, 296, 474 S.E.2d 46, 49 (1996).

For example, in *Brock*, a school bus was involved in an accident and Brock, the transportation supervisor for the school district, was sued under the theory that he negligently hired the driver of the bus. *Id*. at 294, 474 S.E.2d at 47.  The policy contained a clause that excluded coverage for the "ownership, maintenance, operation, use, loading, or unloading…of vehicles of any kind." *Id*. at 296, 474

S.E.2d at 49. The insurer claimed that the policy excluded coverage because of the accident involved a vehicle. *Id*. The trial court denied the insurer's motion for summary judgment and the insurer appealed. *Id*. The Georgia Court of Appeals held that the policy did not exclude coverage because the claim against Brock was for negligent hiring and that claim did not relate to the operation of the bus. *Id*.

Here, the instrumentality that caused Turner's injuries was the tree that struck her house and the allegations made against Mr. Payne in the *Hollomon* Litigation relate to his conduct in felling the trees. As in *Brock*, that a motor vehicle is tangentially related to the resulting harm is irrelevant. The Accident and *Hollomon* Litigation is not excluded under the Policy's motor vehicle exclusion.

## CONCLUSION

For the reasons stated above, this Court should deny SF's motion for summary judgment. Questions of material fact remain regarding when SF received notice of the Accident, whether notice of the Accident was timely, whether Payne's failure to immediately notify SF of the accident was reasonable and justified, and whether notice of the *Hollomon* Litigation was timely. Furthermore, the motor vehicle exclusion does not apply to bar coverage for the Accident and SF has waived its right to argue that the motor vehicle exclusion does apply.

Respectfully submitted this 30th day of December, 2011.

                              THE DWYER LAW GROUP:

                              By: /s/ J. Matthew Dwyer, Jr.
                                    J. MATTHEW DWYER, JR.
                                    State Bar No. 236400
                                    [with express permission]
                                    Attorneys for Plaintiff

2100 Riveredge Parkway, Suite 700
Atlanta, GA 30328
(770) 956-1984 (Telephone)
(770) 956-1381 (Fax)
matt@thedwyerlawgroup.com

                              CARLOCK, COPELAND & STAIR, LLP

                              By: /s/ Fred M. Valz, III
                                    FRED M. VALZ, III
                                    State Bar No.: 723379
                                    MEGAN E. BOYD
                                    State Bar No. 211079
                                    Attorneys for Plaintiff

191 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30303
(404) 522-8220 (Telephone)
(404) 523-2345 (Fax)
fvalz@carlockcopeland.com
mboyd@carlockcopeland.com

## **CERTIFICATION AS TO FONT**

Pursuant to N.D. Ga. Local Rule 7.1 D, I hereby certify that this document is submitted in Times Roman 14 point type as required by N.D. Ga. Local Rule 5.1(b).

This 30th day of December, 2011.

/s/ Fred M. Valz, III
FRED M. VALZ, III
State Bar No.: 723379
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Court using the CM/ECF system which will automatically send e-mail notification of such filing, and via U.S. Mail, proper postage prepaid to the following attorneys of record:

Thomas W. Curvin, Esq.
Molley J. Clarkson, Esq.
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996
thomas.curvin@sutherland.com
molley.clarkson@sutherland.com

Michael J. Athans, Esq.
Jeffrey A. Kershaw, Esq.
Fields, Howell, Athans & McLaughlin LLP
191 Peachtree Street, N.E., Suite 4600
Atlanta, GA 30303
mathans@fieldshowell.com
jkershaw@fieldshowell.com

Peter J. Klee
Charlie Danaher
Luce, Forward, Hamilton & Scripps, LLP
600 West Broadway, Suite 2600
San Diego, California 92101

This 30th day of December, 2011.

By: /s/ Fred M. Valz, III
FRED M. VALZ, III
State Bar No.: 723379
Attorneys for Plaintiff

Carlock, Copeland & Stair, LLP
P.O. Box 56887
Atlanta, Georgia 30343-0887
(404) 522-8220 (Telephone)
(404) 523-2345 (Fax)
fvalz@carlockcopeland.com