# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CLAUDE ROBERT PAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE FARM FIRE AND | ) Case No.: 1:11-CV-00309-AT |
| CASUALTY COMPANY; | ) |
| INFINITY SPECIALTY | ) |
| INSURANCE COMPANY f/k/a | ) |
| ATLANTA SPECIALTY | ) |
| INSURANCE COMPANY; | ) |
| LATASHA WILLIAMS; AND SUE | ) |
| ARENSTEIN, JOINTLY AND | ) |
| SEVERALLY, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF PAYNE'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS AGAINST INFINITY SPECIALTY INSURANCE COMPANY F/K/A ATLANTA SPECIALTY INSURANCE COMPANY

COMES NOW, Plaintiff Claude Robert Payne and files this Reply Brief in Support of his Motion for Summary Judgment as to Claims Against Infinity Specialty Insurance Company f/k/a Atlanta Specialty Insurance Company ("Infinity").

## **INTRODUCTION**

In its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Memorandum"), Infinity again tries to cast blame on everyone but itself for its failure to accept the *Hollomon* plaintiff's demand, failure to settle the claims it could settle against Payne, and failure to protect Payne from the $13.8 million judgment that was ultimately rendered against him in the *Hollomon* Litigation. Infinity's position with respect to Payne's motion is apparently so weak that Infinity tries to obscure the facts even further by attacking Payne for not responding to arguments made by Infinity in Payne's motion for summary judgment. Payne was not required to respond to arguments made by Infinity its in motion for summary judgment in Payne's motion for summary judgment and Payne appropriately and properly reserved its arguments in opposition to Infinity's motion in its response brief.

The evidence is clear--Infinity failed to accept the *Hollomon* plaintiff's demand, failed to settle the claims that were within its power to settle against Payne, and failed to put Payne's interests above its own throughout the pendency of the *Hollomon* Litigation, including at trial. Payne's bankruptcy attorney, Todd Camp, never objected to any of the proposed releases and left the language of the release to the discretion of Kristin Hall, who failed in her duty to Payne.

Infinity now claims that even if it did fail its in duty to Payne, it is not liable because "late notice…is a complete defense to this lawsuit." (Memorandum p. 2). What Infinity refuses to acknowledge, despite overwhelming evidence to the contrary, is that Infinity accepted coverage for the claims made against Payne in the *Hollomon* Litigation and has waived its right to rely on late notice as a defense.

No questions of material fact remain and Payne is entitled to judgment as a matter of law.

## ARGUMENT AND AUTHORITY

### A.     Infinity did not accept the *Hollomon* plaintiff's demand

Despite Infinity's arguments to the contrary, Infinity did not accept the *Hollomon* plaintiff's demand to settle the wrongful death claim asserted by Stacy Hollomon. Infinity claims that James Neuberger conceded that Infinity accepted the demand (Memorandum p. 3). In fact, Neuberger has maintained, since 2008, that there was no meeting of the minds regarding the settlement demand. (July 23, 2008 Letter, Exhibit 21 to Payne's Statement of Material Facts). It is clear that there was no meeting of the minds "at the same time, upon the same subject matter, and in the same sense" such that an enforceable contract was formed. *Jones v. Frickey*, 274 Ga.App. 398, 401, 618 S.E.2d 29, 31 (2005). This is apparent from the subsequent conduct of Infinity and Hall, who made it clear on numerous

occasions, though the various draft settlement agreements, that their understanding of the terms of the alleged settlement differed from the *Hollomon* plaintiff's offer.

As Payne has stated previously, there can be no question that the conduct of Infinity constituted a counteroffer to the February 19 Letter. In its purported acceptance, Infinity tried to vary the terms of the proposed releases to release more parties and more claims than offered by the *Hollomon* plaintiff. This constituted a counteroffer. The February 19 Letter was clear—it offered to release the wrongful death claim only—and Infinity's attempts to include language in the release that varied the terms of the February 19 Letter was a counteroffer. Infinity had both a right and a duty to settle only the wrongful death claim for the Infinity Policy limits and it failed to do so. *See Nash v. Allstate Ins. Co.*, 256 Ga.App. 143, 567 S.E.2d 748 (2002).

Infinity claims that the language of the release proposed by Kristin Hall on March 10, 2008 was consistent with the terms of the demand. (Memorandum p. 6). As Payne stated at length in his motion for summary judgment, the release proposed by Hall in March 2008 was in no way consistent with the demand because it purported to release claims for property damage, funeral expenses, and medical expenses, which claims were not held by the *Hollomon* plaintiff but were held by the estate, and which claims were not part of the demand. Furthermore, the release proposed by Hall in June 2008 also was inconsistent with the demand

and attempted to expand the terms of the demand to release claims that the *Hollomon* plaintiff had not offered to release. It is clear that the understanding of Infinity and Hall regarding the terms of the agreement differed from the *Hollomon* plaintiff's offer.

The cases cited by Infinity in opposition to Payne's motion for summary judgment are inapposite because there was no meeting of the minds sufficient to form a contract at the time of Infinity's purported acceptance of the *Hollomon* plaintiff's demand. Furthermore, the cases cited by Infinity all involve a single plaintiff with a single claim where the offer and acceptance necessarily settled and extinguished all the plaintiff's claims against the defendant. In this case, the demand was to settle only one of two different claims against Payne and Infinity's response indicates there was no meeting of the minds between the *Hollomon* plaintiff and Infinity because Infinity clearly attempted to settle and obtain a release of both claims.

Furthermore, the cases cited by Payne are controlling. It is clear that Infinity did not accept the *Hollomon* plaintiff's demand because Infinity made a counteroffer in attempting to expand the breadth of the terms of the release to include claims that were not part of the *Hollomon* plaintiff's demand.

Additionally, that Infinity claims Kristin Hall was "willing to work with [Neuberger] to find mutually agreeable language" is irrelevant--Infinity and

5

Neuberger never reached a settlement agreement and never entered into a settlement agreement, thereby leaving Payne exposed to judgment. That said, even though Hall claimed Infinity was willing to work with the *Hollomon* plaintiff to reach "mutually agreeable language," the facts indicate that Infinity was willing to do no such thing and on numerous occasions made that clear. Then, after Infinity had failed to accept the demand and realized the error of its ways, it attempted to backpedal and offered to accept the language of the Neuberger release. Unfortunately for Payne, at that point, it was too late.

     Furthermore, after the massive $13.8 million judgment was rendered against Payne, Infinity tendered the $25,000 Infinity Policy limits to the *Hollomon* plaintiff, not to protect Payne, but, to protect itself, as evidenced by the fact that it did not even seek to obtain the release evidencing the settlement it claimed it had with the *Hollomon* plaintiff in exchange for that payment, but, instead, sought to confirm "that Plaintiffs will not pursue any further claims <u>against Infinity… including but not limited to any claims for bad faith penalties.</u>" (July 9 Letter) (emphasis supplied).

     If, as Infinity claims, a settlement agreement exists, Infinity has offered no explanation for why it failed to bring the purported settlement agreement to the *Hollomon* trial court's attention, failed to file an interpleader or otherwise attempt to tender the Infinity Policy limits into the registry of the court, and has failed seek

6

to enforce the settlement agreement or moved to set aside the wrongful death judgment against Payne. Infinity makes some amorphous arguments that to do so would destroy the alleged agreement between Neuberger and Payne's bankruptcy attorney Camp, which agreement did not exist. (Affidavit of Michael Todd Camp ¶¶ 24-25, Exhibit 11 to Payne's Response and Opposition to Infinity's Statement of Undisputed Material Facts). This statement is untrue. There is nothing in a settlement agreement embodied in a limited liability release that prevents a tortfeasor from moving to enforce the terms of that agreement and release. Here, what Payne is asking, is why Infinity has failed to move to enforce the claimed settlement agreement between Payne and Stacy Hollomon for the wrongful death claim.

Infinity claims that Payne's question evidences a misunderstanding of the workings of a limited liability release. (Memorandum p. 11). It does not. Payne does not dispute that under a limited liability release, the *Hollomon* plaintiff would be entitled to obtain a judgment against him. However, under settlement pursuant to a limited liability release, the insured's personal exposure for the claims settled is extinguished and the insured only remains exposed to the extent of further insurance coverage. The judgment against Payne totaled $13.8 million, $10.7 million of which was allocated to the wrongful death claim, which claim Infinity had the ability to settle but failed to settle.

As stated below and in Payne's motion for summary judgment, however, there can be no doubt that Stacy Hollomon was entitled to recover the full value of the wrongful death claim under O.C.G.A. section 51-4-2 and interpretive case law. Had Infinity settled the wrongful death claim asserted by Stacy Hollomon against Payne for the $25,000 Infinity Policy limits, which claim clearly was the larger of the two claims as evidenced by the $10.7 million judgment on the wrongful death claim ultimately rendered against him, Payne's personal exposure in the *Hollomon* Litigation would have been capped at the amount the estate was entitled to recover, and the $10.7 million judgment on the wrongful death claim would have been settled for $25,000. If, as Infinity claims, it settled the wrongful death claim against Payne, Infinity could have and should have protected its insured, Payne, by moving to enforce that settlement. It clearly has not done so because it knows that no agreement exists.

**B.    Payne did not object to the release proposed by Neuberger**

Despite Infinity's allegations to the contrary, Payne did not object to the release proposed by Neuberger. Neither Payne nor his bankruptcy attorney, Camp, ever objected to the release proposed by Neuberger. Camp was not even hired by Payne until May 2008, long after settlement discussions had occurred and Infinity had rejected the demand. Camp never told Infinity that he objected to Neuberger's release because it did not release all potential wrongful death claims. (Affidavit of

8

Michael Todd Camp ¶¶ 12-13, Exhibit 11 to Payne's Response to Infinity's Statement of Undisputed Material Facts). Additionally, Camp never told Infinity to do anything, including attempt to obtain a release of all claims. In fact, Camp, as Payne's bankruptcy counsel, left the terms of any release of the wrongful death claims to the complete discretion of Infinity. (Affidavit fo Michael Todd Camp ¶¶ 15-19, Exhibit 11 to Payne's Response to Infinity's Statement of Undisputed Material Facts).

Furthermore, in an attempt to again deflect blame from itself, Infinity claims that Payne objected to the release through Sean Hynes, who was hired by State Farm to represent Payne for a short period of time in 2008. Sean Hynes never met with Payne nor spoke with him on the phone and can hardly be said to have known of Payne's desires regarding the Neuberger release or represented Payne's position with respect to that release. (Sean Hynes 13:1-6; 17:23-25; 18:1-2; 19:3-9, Exhibit 10 to Payne's Response to Infinity's Statement of Undisputed Material Facts). Infinity, however, owed an independent duty to Payne to protect Payne's interests and it failed to do so.

Infinity also makes much of the fact that the release proposed by Neuberger would have left Payne personally exposed to liability, as if this fact somehow releases Infinity from all liability to Payne. There is no doubt that the Neuberger release would have left Payne exposed to personal liability for the <u>estate</u> claim--the

9

*Hollomon* plaintiff's demand was only to settle the wrongful death claim and there was no offer by the *Hollomon* plaintiff to settle the estate claim. Even when the insurer cannot effectuate settlement of all claims against its insured, it has a duty to settle as many claims against its insured as it can settle. *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 580 S.E.2d 519 (2003). Here, as noted previously, the failure of Infinity to settle the wrongful death claim--the claim that was within its power to settle--resulted in a $10.7 million judgment against Payne on <u>that</u> claim. There is no evidence that it was within Infinity's power to settle the estate claim and Payne does not contend otherwise. It was, however, within Infinity's power to settle the wrongful death claim asserted by Stacy Hollomon and Infinity failed to do so, leaving its insured exposed.

    **C.**     **Settlement of the wrongful death claim would not have left Payne exposed to liability from any of Ms. Turner's other heirs for the wrongful death claim.**

In support of its position that Payne would have remained exposed had Infinity accepted Neuberger's proposed release, Infinity cites to two Georgia cases, *Lynn* and *Wells*, both of which were decided under Georgia Code section 105-1302, a prior version of O.C.G.A. section 51-4-2, which section has since been modified. The code section in effect in 2008, the year in which the settlement demand was made, and interpretive case law make it very clear that it is not necessary that all heirs of a decedent be joined as party plaintiffs to a wrongful

10

death action and that upon settlement of a wrongful death claim, heirs have no right of action against the tortfeasor. O.C.G.A. § 51-4-2; *Adams v. Wright*, 162 Ga.App. 550, 293 S.E.2d 446 (1982).  Furthermore, Infinity's reliance on an Idaho case interpreting Idaho statues is completely misplaced, as is its reliance on an A.L.R. article that does not cite to a single Georgia case other than *Lynn* and *Wells*, which as described above, are now inapplicable.  As such, it is clear that if Infinity had fulfilled its duty to Payne and settled the wrongful death claim asserted by Stacy Hollomon, the settlement of that claim would have extinguished the entire wrongful death claim and extinguished the right of Ms. Turner's other heirs to pursue <u>any</u> judgment against Payne for the wrongful death claim.

> **D. Payne's claim is not barred because Infinity accepted coverage and has waived any right to rely on the notice provision as a defense to coverage.**

Infinity claims that Payne's action against it is barred because Payne failed to comply with the notice provision of the Infinity Policy.  In fact, Payne's claim is not barred and Infinity has waived any right to rely on the notice provision of the Infinity Policy because it accepted coverage. (Infinity Claim Notes p. 7, Exhibit 4 to Payne's Statement of Material Facts; February 20, 2008 Letter, Exhibit 8 to Payne's Statement of Material Facts; Touchstone Deposition 18:13-24; 19:4-8, 12-21, Exhibit 9 to Payne's Statement of Material Facts).

Georgia law is clear--notice provisions are strictly construed and "small circumstances will be sufficient to show a wavier by the company." *State Farm Mut. Auto. Ins. Co. v. Wright*, 137 Ga.App. 819, 822, 224 S.E.2d 796, 798 (1976). "<u>Payment by the insurer with knowledge of the pertinent circumstances giving it a policy defense waives its right to rely thereon</u>." *Sargent v. Allstate Ins. Co.*, 165 Ga.App. 863, 866, 303 S.E.2d 43, 47 (1983) (emphasis supplied). In this case, while Infinity did send Payne a reservation of rights, it later determined that it would provide coverage for the claim made in the *Hollomon* Litigation and paid both a property damage claim and a liability claim under the Infinity Policy. These facts are indisputable--there are two documents as well as testimony from Infinity's in-house counsel that prove Infinity accepted coverage for the claim against Payne in the *Hollomon* Litigation.

Under *Wright*, *Sargent*, and other cases cited by Payne in his Response to Infinity's Motion for Summary Judgment, Infinity's conduct constitutes waiver of the notice provision and Infinity is now estopped to deny there is coverage for the claim made against Payne. Were this not the case, insurers would be free to undertake coverage, defend their insureds, and then walk away without any liability if they failed to settle the claims, failed to pay the claims, or failed to put their insureds interests ahead of their own. Georgia law is clear--because it

accepted coverage and made payments under the Infinity Policy, Infinity is estopped to deny there is coverage under the policy for the claims against Payne.

Even if Infinity has not waived its right to rely on the notice provision, notification of the claim was not untimely or, at the least, the timing of the notice was justified and reasonable as stated by Payne in his response to Infinity's motion for summary judgment. The accident was not a typical motor vehicle accident and Payne was not driving on a roadway at the time of the accident. Furthermore, Payne was represented by two different lawyers in the time period after the accident, neither of whom considered whether the Infinity Policy might apply. Payne himself also never had any idea that the Infinity Policy might provide coverage, as evidence by the fact that Payne never would have paid attorneys out-of-pocket or paid the property damage judgment against him if he had any idea the Infinity Policy might provide coverage. Infinity was notified of the claim as soon as anyone considered whether the Infinity policy might apply. Thus, it is clear that the notice provided to Infinity was not untimely or, at the least, the timing was reasonable and justified.

## CONCLUSION

For the reasons stated herein and those contained in Payne's Motion for Summary Judgment, Payne respectfully requests that this Court grant his motion for summary judgment as to his claims for negligent and bad faith failure to settle

against Defendant Infinity and issue an order that, as a matter of law, Infinity acted negligently and in bad faith in handling the claims made against Payne in the *Hollomon* Litigation.

Respectfully submitted this 11th day of January, 2012.

                        THE DWYER LAW GROUP:

                        By:  /s/ J. Matthew Dwyer, Jr.
                              J. MATTHEW DWYER, JR.
                              State Bar No. 236400
                              [with express permission]
                              Attorneys for Plaintiff

2100 Riveredge Parkway, Suite 700
Atlanta, GA 30328
(770) 956-1984 (Telephone)
(770) 956-1381 (Fax)
matt@thedwyerlawgroup.com

                        CARLOCK, COPELAND & STAIR, LLP

                        By:  /s/ Fred M. Valz, III
                              FRED M. VALZ, III
                              State Bar No.: 723379
                              MEGAN E. BOYD
                              State Bar No. 211079
                              Attorneys for Plaintiff

191 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30303
(404) 522-8220 (Telephone)
(404) 523-2345 (Fax)
fvalz@carlockcopeland.com
mboyd@carlockcopeland.com

## **CERTIFICATION AS TO FONT**

Pursuant to N.D. Ga. Local Rule 7.1 D, I hereby certify that this document is submitted in Times Roman 14 point type as required by N.D. Ga. Local Rule 5.1(b).

This 11th day of January, 2012.

/s/ Fred M. Valz, III
FRED M. VALZ, III
State Bar No.: 723379
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Court using the CM/ECF system which will automatically send e-mail notification of such filing, and via U.S. Mail, proper postage prepaid to the following attorneys of record:

| | |
|---|---|
| Thomas W. Curvin, Esq.<br>Molley J. Clarkson, Esq.<br>Sutherland Asbill & Brennan LLP<br>999 Peachtree Street, NE<br>Atlanta, GA 30309-3996<br>thomas.curvin@sutherland.com<br>molley.clarkson@sutherland.com | Michael J. Athans, Esq.<br>Jeffrey A. Kershaw, Esq.<br>Fields, Howell, Athans & McLaughlin LLP<br>191 Peachtree Street, N.E., Suite 4600<br>Atlanta, GA 30303<br>mathans@fieldshowell.com<br>jkershaw@fieldshowell.com |

Peter J. Klee
Charlie Danaher
Luce, Forward, Hamilton & Scripps, LLP
600 West Broadway, Suite 2600
San Diego, California 92101

This 11th day of January, 2012.

                                                By:  /s/ Fred M. Valz, III
                                                     FRED M. VALZ, III
                                                     State Bar No.: 723379
                                                     Attorneys for Plaintiff

Carlock, Copeland & Stair, LLP
P.O. Box 56887
Atlanta, Georgia 30343-0887
(404) 522-8220 (Telephone)
(404) 523-2345 (Fax)
fvalz@carlockcopeland.com

3630777