**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CLAUDE ROBERT PAYNE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> STATE FARM FIRE AND CASUALTY ) <br> COMPANY and INFINITY SPECIALTY ) <br> INSURANCE COMPANY f/k/a ) <br> ATLANTA SPECIALTY INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendants. ) | CIVIL ACTION FILE <br> NO.: 1:11-cv-00309-AT |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

### I.     INTRODUCTION

Plaintiff Claude Robert Payne ("Payne") has not created a genuine issue of fact that his State Farm homeowners policy covered the July 1, 2006 incident or the resulting wrongful death claim. Payne bears the burden of proving coverage, and to survive summary judgment, he must show that a genuine issue of fact exists as to coverage, which he has failed to do. First, it is undisputed that Payne—the policyholder who is obligated to comply with policy conditions—waited 18

1

months before notifying State Farm, and his attempt to suggest that some unknown mystery person may have notified State Farm earlier is legally irrelevant and without any genuine basis in fact. Second, Payne's use of his pickup truck to pull down the tree that caused the death brings this incident squarely within the motor vehicle exclusion, because but-for his use of his truck to pull down the tree, the incident would not have occurred. Because this event was not covered, State Farm had no duty to defend or settle the wrongful death lawsuit against Payne. State Farm is, therefore, entitled to summary judgment on all claims.

## II.  ARGUMENT

### A.  Payne Waited 18 Months Before He Notified State Farm, in Breach of the Policy's Notice Conditions.

#### 1.  There is No Evidence that State Farm Knew of a Claim Prior to January 2008.

Payne's State Farm homeowners policy (the "Homeowners Policy") requires, as a condition precedent of coverage, that *the insured* provide notice to State Farm "as soon as practicable" of any occurrence and that *the insured* "immediately forward" any lawsuit to State Farm. (App. 24 at SF00671-72, ¶¶ 3,

2

6.)[1]  It is undisputed that Payne did not notify State Farm of the incident, or the wrongful death arising out of that activity (the "*Hollomon* Lawsuit"), prior to January 24, 2008, which was 18 months too late.  (ECF No. 102 at 12, ¶ 19.)  Because Payne did not provide State Farm with timely notice of the loss or the *Hollomon* Lawsuit, he therefore materially breached the notice provision, which means there was no coverage available under the Homeowners Policy.  *Lankford v. State Farm Mut. Auto. Ins. Co.*, 703 S.E.2d 436, 438-39 (Ga. App. 2010); *Federated Mut. Ins. Co. v. Ownbey Enters., Inc.*, 627 S.E.2d 917, 919 (Ga. App. 2006).

    Nevertheless, Payne contends that State Farm might have received notice of the incident earlier—from some unknown source—based on two items in the record: (1) an entry in a State Farm computer field, captioned "Date Reported to Agent," showing the July 1, 2006 date of loss, and (2) handwritten notes summarizing a 2008 telephone conversation with Patrick Hill, an employee of

---

[1] Citations to record excerpts in this Reply are designated as "App. ___," referring to Defendant State Farm Fire and Casualty's Supporting Excerpts to Its Motion for Summary Judgment, ECF No. 70-3.  For newly cited material, it will be referred to as "Ex. ___" and will be attached hereto.

Payne's State Farm agent, who, according to Payne's proffered interpretation of the note, purportedly recalled a discussion of the incident in 2007. Even assuming that notice from an unnamed third party could excuse Payne's admitted failure to personally provide notice to State Farm, these items still do not defeat summary judgment in the face of clear, consistent evidence that State Farm did not receive notice of this incident before January 2008.

Payne first points to a single field in the Fire Claim Service Record—"Date Reported to Agent"—which contains the date of loss: July 1, 2006. (App. 25, Ex. A.) As State Farm's witnesses repeatedly testified, however, this entry is nothing more than a data processing error. (Dyer Dep. at 73:1-16 (attached as Ex. A); Wilkins Dep. at 80:20-81:7 (attached as Ex. B); App. 25 at ¶ 6.) When Payne first reported his claim to State Farm on January 24, 2008, State Farm Claim Service Assistant Shani Brown typed into a computer information obtained directly from Payne in order to open his new claim. (App. 25 at ¶¶ 3-4.) The "Date Reported to Agent" field would have been populated as part of Ms. Brown's claim processing activity. (Reina Dep. at 38:22-39:5 (attached as Ex. C); Ex. A at 75:9-17.) Critically, the *only* date Brown would have had available to her to use in processing Payne's new claim was the date of loss—July 1, 2006. (App. 25 at ¶ 4.)

4

Thus, the entry of July 1, 2006 into the "Date Reported to Agent" field is nothing more than a simple data processing error. And there is zero evidence that anyone reported this incident to State Farm on July 1, 2006.

Payne does not—because he cannot—seriously dispute the fact that the "Date Reported to Agent" field was erroneously completed with the date of loss. Instead, Payne contends there is alternative evidence indicating that State Farm was aware of Payne's claim in 2007. In March 2008, a State Farm claim representative spoke over the telephone with Patrick Hill, an employee in Payne's former State Farm agency. The claim representative's handwritten note of that call says that Hill recalled "conversation of the incident when he first started in the office last year." (Pl. Opp'n Ex. 6 at SF00839). Hill, however, has unequivocally denied that such a statement could possibly be true because he never knew of the July 1, 2006 loss before January 2008 when Payne reported it to State Farm. (Hill Dep. at 25:16-26:21 (attached as Ex. D).) Even if one accepted the note as accurate at face value, however, it does not say that Payne or anyone acting on his behalf had reported the claim to the agent, or had identified Payne as being involved in any way, only that someone in the office talked about the incident itself, which would hardly be surprising, since the woman's death had been

5

reported in the local media (without mentioning Mr. Payne's involvement). Everyone involved—the State Farm employees, the agency employees, and, most important, *Payne himself*—has testified unequivocally that this incident was not reported to State Farm until January 2008. There is no genuine issue as to this fact.

### 2. Ignorance of Policy Terms Does Not Excuse Payne's Late Notice.

Payne contends that his late notice should be ignored because "neither Payne nor his attorneys considered whether any policy of insurance might provide coverage for the Accident and Payne was never told by any attorney to even look at the [Homeowners] Policy." (ECF No. 101 at 6.) This argument is nothing more than asserting ignorance as a defense to delay. Under Georgia law, however, Payne's (and his attorneys') ignorance of the Homeowners Policy terms does *not* excuse his failure to timely notify State Farm, because any reasonable policyholder would have known of the possibility of liability arising out of the July 1, 2006 incident. *Allstate Ins. Co. v. Walker*, 562 S.E.2d 267, 268-69 (Ga. App. 2002); *Protective Ins. Co. v. Johnson Se. Fid. Ins. Co.*, 352 S.E.2d 760, 761 (Ga. 1987); *Lankford*, 703 S.E.2d at 440; *Townsend v. Nat'l Union Fire Ins. Co.*, 397 S.E.2d 61, 62-63 (Ga. App. 1990)*; Snow v. Atlanta Int'l Ins. Co.*, 354 S.E.2d 644, 645 (Ga. App. 1987).

Although Payne cites to a handful of cases on justification for late notice, these cases involve factual scenarios in which the insureds arguably could reasonably have believed they were not at risk of a claim, because they were unaware of the extent or severity of damage caused by their actions. In *Forshee v. Employers Mutual Casualty Co.*, 711 S.E.2d 28, 32-33 (Ga. App. 2011), for example, the gas station owners were unaware of the severity of a customer's fall or the injuries she sustained. Similarly, in *State Farm Fire and Casualty Co. v. Walnut Avenue Partners, LLC*, 675 S.E. 2d 534, 539 (Ga. App. 2009), owners of a dry cleaning business were arguably unaware of the scope and severity of the property damage caused by their use of chemicals in the course of their business. Here by contrast, Payne knew he had killed a woman, and any reasonable person would know that a claim was probable, indeed, highly likely.

Payne's contention that his delay in providing notice of the *Hollomon* Lawsuit should be excused is similarly unavailing. An insured's failure to forward notice of lawsuit based on a misapprehension of the severity of the damages, or ignorance of policy terms, is insufficient to justify late notice of suit. (ECF 70-1 at 19-20, 24-25.) Nevertheless, Payne also contends that his delay was justified simply because the case was in its "early stages." (ECF No. 101 at 9-10.) As an

7

initial matter, an insurer is not required to show that it was prejudiced by a delay in notice in order for such delay to bar coverage. *Canadyne-Georgia Corp. v. Cont'l Ins. Co.*, 999 F.2d 1547, 1557 (11th Cir. 1993). But Payne's statement is demonstrably untrue—by the time State Farm was notified of the *Hollomon* Lawsuit, Payne had answered, responded to written discovery requests, produced documents, and even given his deposition. (Payne Dep. at 32:5-34:1 (attached as Ex. E); App. 5 at 27:12-28:3; Apps. 11, 12.)

While Payne pleads ignorance as an excuse for his failure to timely notify State Farm, Payne avoided every opportunity to educate himself about the possibility of insurance coverage. Payne knew that he had a Homeowners Policy with State Farm, and he knew that the Policy provided personal liability coverage. (Ex. E at 54:7-11, 55:24-56:2.) Yet in the days and weeks immediately following Ms. Turner's death, while Payne called and wrote his State Farm agents about staying on the Policy (because his soon to be ex-wife wanted him off the Policy), Payne never even mentioned the incident to his agent or asked about possible coverage. (Apps. 14, 17; Ex. E at 45:7-46:18, 49:23-50:8, 51:3-52:10, 53:23-54:6, 56:22-25.) Similarly, Payne never bothered to read his Homeowners Policy, or even to discuss it with any of his several personal attorneys. (Ex. E at 52:11-53:13,

54:7-56:21, 57:1-8, 76:5-20.)  To the extent Payne blames his personal attorneys for not advising him to notify State Farm, that may be an issue between Payne and his attorneys, but it does not discharge him from his duty to State Farm to comply with policy conditions.

Payne knew he had caused a death and knew that a serious claim was likely, yet he did nothing to consider whether his insurance might apply and whether he should notify his insurers.  Such ignorance does not excuse an 18-month late notice of the incident.  This point is clear from cases such as *Allstate Ins. Co. v. Walker*, 562 S.E.2d 267, 268-69 (Ga. App. 2002), in which the Court held that a policyholder's claim that he had no idea there might be coverage did *not* excuse late notice.  "There is no evidence. . . that [the insured's] ignorance of the terms of the subject insurance policy was due to any fraud or overreaching on the part of [the insurer] or its agents.  The law requires more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract."  *Id*. at 268 (citation omitted).  *See also Mut. Benefit Health & Accident Ass'n v. Brunke*, 276 F.2d 53, 57 (5th Cir. 1960) (under Georgia law, ignorance of policy terms did not justify failure to report claim within two years).  Payne's late notice of the incident and the lawsuit bars coverage as a matter of law.

### B. The Motor Vehicle Exclusion Bars Coverage

Payne's Homeowners Policy provided personal liability coverage to him, but excluded from coverage "bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned or operated by . . . insured." (App. 24 at SF00669, ¶ 1(e)(2).) It is undisputed that Ms. Turner's death would not have happened but for Payne's use of his pickup truck to pull down the tree that killed her. (ECF No. 70-1 at 25-29; ECF No. 102 at 3-4 ¶ 4.) Payne, however, says that his use of his truck was only tangential to the death. However, a comparison of Payne's tree pulling activity with the sole case cited by Payne in support of his claim, *Guaranty Nat'l Ins. Co. v. Brock*, 474 S.E.2d 46 (Ga. App 1996), actually underscores the central role of Payne's truck in causing the death.

In *Brock*, a school administrator was sued, on a theory of negligent hiring, for hiring a school bus driver who caused an accident that injured others. *Id*. at 47. The administrator himself did not use a motor vehicle in a manner that gave rise to the legal claims against him, someone else used the motor vehicle. *Id*. Accordingly, the *Brock* court held that the motor vehicle exclusion did not apply to the negligent hiring claim against the administrator, because the administrator did

10

not operate the bus, and the claims against the administrator did not rest upon his operation of the bus. *Id*. at 49. Here, unlike *Brock*, Payne's liability for the wrongful death indisputably arose out of his personal operation of his truck—putting the truck in gear and driving it down the driveway to generate the torque necessary to pull down the tree. (App. 1 at 117:1-7, 126:25-133:22, 143:2-146:5.) But for the use of his truck to pull down the tree, the tree would not have fallen on Ms. Turner's trailer. This incident is squarely within the policy exclusion for liability arising out of the "use of a motor vehicle."

Perhaps recognizing that the motor vehicle exclusion applies, Payne alleges that State Farm is nevertheless estopped from raising that issue, because State Farm did not specify the motor vehicle exclusion in prior communications to Payne. Payne's argument is contrary to Georgia law. State Farm tendered a defense to Payne under an explicit reservation of its right to "deny defense or indemnity to [Payne]" for several reasons then under investigation as well as "other reasons which may become known." (App. 19 at SF00132-34.) Because State Farm reserved its right to deny defense or indemnity to Payne, and because Payne accepted State Farm's tender of a defense on that basis, State Farm

preserved its right to raise the motor vehicle exclusion (and any other policy provisions) as barring coverage.

This point is illustrated in *Kay-Lex Co. v. Essex Insurance Co.*, 649 S.E.2d 602, 608-09 (Ga. App. 2007), in which an insurer tendered a defense to its insured under a reservation of rights. The insurer's reservation of rights letter did not specify late notice of a claim as a possible defense to coverage, but did include general language reserving the insurer's right to contest or deny coverage for the incident. *Id*. The insured did not object to a defense on these terms. *Id*. In later coverage litigation, the Court of Appeals held that the insurer's failure specifically to include late notice in its reservation of rights letter did not estop the insurer from raising late notice in the coverage lawsuit. *Id*. at 608-09 (citing *GEICO v. Progressive Cas. Ins. Co.*, 622 S.E.2d 92 (Ga. App. 2005)). In reaching its decision, the *Kay-Lex* court noted that an insurer is not required to "'list each and every basis for contesting coverage in the reservation-of-rights letter before the company [can] raise such in the declaratory judgment action.'" *Id*. at 608 (quoting *GEICO*, 622 S.E.2d at 96). The cases cited by Payne do not contradict this holding, standing only for the general proposition that an insurer's tender of defense *without* a reservation of rights waives its defenses to coverage. *See*

12

*Boatright v. Old Dominion Ins. Co.*, 695 S.E.2d 408, 412-13 (Ga. App. 2010) ("An insurer is not estopped from challenging policy coverage where, as here, counsel *not* provided by the insurer answers. . . on the insured's behalf prior to the insurer notifying the insured of its reservation of rights"); *Jacore Sys., Inc. v. Central Mut. Ins. Co.*, 390 S.E.2d 876, 878 (Ga. App. 1990) (finding that insured's failure to object to insurer reservation of rights and permitting continuation of defense was consent to insurer's terms and did not waive applicable defenses to coverage).

The result in *Kay-Lex* is consistent with Georgia law generally, which provides that insurers are not estopped from raising defenses to coverage simply because they failed to defend an action against an insured. *Colonial Oil Indus. v. Underwriters*, 491 S.E.2d 337, 339 (Ga. 1997) ("The insured is in no better position to create coverage that was never bargained for under its contract."); *see also McCraney v. Fire & Cas. Ins. Co. of Conn.*, 357 S.E.2d 327, 328 (Ga. App. 1987) ("By electing not to defend the suit . . ., [the insurer] *has not*, however, waived either its right or its opportunity to contest [the insureds'] entitlement to a recovery under its policy."). State Farm never waived its defenses to coverage by its defense of Payne—under a reservation of rights—in the *Hollomon* Lawsuit, nor

is State Farm estopped from raising all available defenses to coverage in this bad faith case.

## III.   CONCLUSION

There are two independent reasons why the State Farm policy does not cover this loss:  (1) Payne breached the notice provisions of the Policy; and (2) the motor vehicle exclusion applies.  For these reasons and those set forth in State Farm's opening brief, State Farm is entitled to summary judgment on all claims.

Respectfully submitted this 17th day of January, 2012.

/s/ *Thomas W. Curvin*
Thomas W. Curvin (GA Bar No. 202740)
Molley J. Clarkson (GA Bar No. 142344)
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996
Telephone: 404-853-8000
Facsimile:  404-853-8806
thomas.curvin@sutherland.com
molley.clarkson@sutherland.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1D, the undersigned counsel hereby certifies that the foregoing DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT complies with the font and point selections approved by the Court in L.R. 5.1B. This document was prepared on a computer using the Times New Roman font (14 point).

/s/ *Thomas W. Curvin*
*Attorney for Defendant State Farm Fire and Casualty Company*

## CERTIFICATE OF SERVICE

I certify that a copy of **DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed electronically on January 17, 2012 using the CM/ECF system in the United States District Court for the Northern District of Georgia, with notice of the same to be electronically mailed by the Court to the following attorneys of record:

| | |
|---|---|
| J. Matthew Dwyer, Jr.<br>Dwyer & White<br>2100 Riveredge Parkway<br>Suite 700<br>Atlanta, GA 30328 | Frederick Mills Valz, III<br>Megan E. Boyd<br>Carlock, Copeland & Stair, LLP<br>191 Peachtree Street, N.E.<br>Suite 3600<br>Atlanta, GA 30303 |
| Jeffrey A. Kershaw<br>Michael J. Athans<br>Fields Howell Athans<br>  & McLaughlin, LLP<br>191 Peachtree Street, NE<br>Suite 4600<br>Atlanta, GA 30303 | Peter H. Klee (P.H.V.)<br>Charles A. Danaher (P.H.V.)<br>Luce Forward Hamilton & Scripps LLP<br>600 W. Broadway, Suite 2600<br>San Diego, CA 92101 |

            /s/ *Thomas W. Curvin*
            Thomas W. Curvin